JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
By: MICHELLE DI SILVESTRO ALANIS
Deputy City Attorney
Nevada Bar No. 10024
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: pmata@lasvegasnevada.gov
Email: malanis@lasvegasnevada.gov
Attorneys for CITY DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Lance Downes-Covington, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>City of Las Vegas, a political subdivision of the state of Nevada; Sergio Guzman, in their individual capacity; Sarkis Jopalian, in their individual capacity; Paul Hartz, in their individual capacity; Janelle Mazza, in their individual capacity; and Doe Las Vegas City Marshals 1-10, in their individual capacity,<br><br>Defendants. | CASE NO. 2:25-cv-0737-JAD-BNW |

## MOTION TO DISMISS

Defendants CITY OF LAS VEGAS, SERGIO GUZMAN, SARKIS JOPALIAN, PAUL HARTZ, and JANELLE MAZZA, through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, PAUL MATA, Deputy City Attorney, and MICHELLE DI SILVESTRO ALANIS, Deputy City Attorney, move to dismiss Plaintiff's First Amended Complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6). Dismissal is warranted because Plaintiff does not state a claim upon which relief can be granted.

. . . .

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION

Plaintiff Lance Downes-Covington ("Plaintiff") brings the instant action based on a traffic stop that occurred over two years ago. After Plaintiff ran a stop sign on a City of Las Vegas ("City") street, a Deputy City Marshal who observed the violation alerted Plaintiff to pull over by signaling his patrol lights. Plaintiff failed to immediately pull over and instead continued driving. When Plaintiff finally pulled over, Plaintiff repeatedly failed to follow the marshal's instructions in the course of what should have been a routine traffic stop. As a result, the marshal proceeded to arrest Plaintiff based on Plaintiff's obstruction of the citation process.

Plaintiff now asserts claims for violations of his constitutional rights under the U.S. Constitution and the Nevada Constitution, asserting unlawful search and seizure, prolonged detention and excessive force. Plaintiff brings his claims against the City, the marshal who pulled him over, Sergio Guzman, and three other officers, Lieutenant Paul Hartz, Sergeant Sarkis Jopalian, and Officer Janelle Mazza, who merely arrived at the scene after Plaintiff's arrest.

An underlying, legally incorrect theory in Plaintiff's complaint is that City marshals lack the legal authority to conduct a traffic stop in the first place. However, Plaintiff's assertion, couched as facts, is contrary to the clear statutory authority under which marshals can and do operate. Because the stop and arrest were lawful, Plaintiff cannot assert his constitutional claims as a matter of law. Similarly, as explained below, Plaintiff's related state tort claims cannot survive as pled. Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety.

## II.      PLAINTIFF'S ALLEGATIONS

Plaintiff is a City of Las Vegas employee.[1] Around 11 p.m. on the evening of Saturday, April 29, 2023, Plaintiff was headed home near the intersection of Simmons Street and Holly Avenue within the city limits of the City of Las Vegas.[2] Deputy City Marshal Sergio Guzman flashed his lights for Plaintiff to pull over, due to Plaintiff running a stop sign.[3] While Guzman initiated the traffic stop on a City street, Plaintiff continued to drive and did not pull over until he

---

[1] ECF No. 9, First Amended Complaint ("Complaint"), at ¶ 29.
[2] *Id.* at ¶ 15.
[3] *Id.* at ¶¶ 16, 57.

was "within his [residential] community."[4]

Once Plaintiff stopped, Guzman asked Plaintiff to roll down all of his windows.[5] Rather than comply, however, Plaintiff questioned Guzman and asked "why."[6] After Guzman instructed Plaintiff to step outside of his car, Plaintiff began to roll up his driver's window "without permission."[7] Upon exiting the vehicle, Guzman instructed Plaintiff to walk to the front of Guzman's squad car and face forward.[8] Yet again disobeying Guzman's instructions, Plaintiff did not face forward, arguing that he "needed" to be able to see Guzman, too.[9] Following Plaintiff's repeated failure to follow Guzman's instructions, Guzman began placing Plaintiff under arrest.[10] While Plaintiff alleges he was "in pain" during this process, Plaintiff's response to Guzman was to tell him to "relax," rather than convey that he was in pain.[11] Guzman placed Plaintiff on the ground during the arrest process.[12]

While Plaintiff was still on the ground, City marshals Jopalian and Mazza arrived on the scene.[13] Plaintiff was on the ground for "over three minutes" before Guzman and Mazza returned Plaintiff to his feet.[14] Guzman again informed Plaintiff that he was under arrest.[15] Thereafter, a marshal "who appeared to be Defendant Hartz" arrived at the scene and spoke with Guzman.[16] Plaintiff learned that he was receiving a citation for running a stop sign and not stopping for emergency lights, and a separate citation for obstructing and resisting.[17] The "Marshal Defendants" also advised Plaintiff he would be going to jail as a result of obstructing and resisting.[18] Mazza transported Plaintiff to the Las Vegas Detention Center, and Plaintiff was then transported to University Medical Center ("UMC") pursuant to a medical referral.[19] Plaintiff was

---

[4] *Id.* at ¶¶ 17, 57.
[5] *Id.* at ¶ 23.
[6] *Id.*
[7] *Id.* at ¶ 25-27.
[8] *Id.* at ¶ 27-28.
[9] *Id.* at ¶ 27-28.
[10] *Id.* at ¶ 30-31.
[11] *Id.* at ¶ 34-35.
[12] *Id.* at ¶¶ 37, 40.
[13] *Id.* at ¶ 41.
[14] *Id.* at ¶ 43-44.
[15] *Id.* at ¶ 47
[16] *Id.* at ¶ 49.
[17] *Id.* at ¶ 57.
[18] *Id.* at ¶ 58.
[19] *Id.* at ¶ 61.

1    released from custody at UMC around 3 a.m. on April 30, 2023.[20]

2        Plaintiff filed his initial complaint on April 25, 2025, and his operative First Amended

3    Complaint on May 30, 2025. He raises 17 claims for relief, including claims under the U.S. and

4    Nevada Constitutions, intentional torts under Nevada law, negligent training/supervision, and a

5    "cause of action" for attorneys' fees.[21] Plaintiff also seeks punitive damages against all defendants,

6    even though punitive damages are not allowed against the City as a matter of law.[22]

7    **III.    LEGAL STANDARD**

8        Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain

9    statement of the claim showing that the pleader is entitled to relief."[23] While Rule 8 does not

10   require detailed factual allegations, the Supreme Court clarified in *Bell Atlantic Corporation v.*

11   *Twombly* and *Ashcroft v. Iqbal* that the properly pled claim must contain enough facts to "state a

12   claim to relief that is plausible on its face."[24] This "demands more than an unadorned, the-

13   defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the

14   speculative level."[25] In other words, a complaint must make direct or inferential allegations about

15   "all the material elements necessary to sustain recovery under *some* viable legal theory."[26]

16       District courts employ a two-step approach when evaluating a complaint's sufficiency on a

17   Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pled factual allegations

18   in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[27]

19   Mere recitals of the elements of a cause of action, supported only by conclusory statements, are

20   insufficient.[28] Second, the court must consider whether the well-pled factual allegations state a

21   plausible claim for relief.[29] A claim is facially plausible when the complaint alleges facts that allow

22

---

23   [20] *Id.* at ¶ 62.

     [21] *See generally,* ECF No. 9.

24   [22] *Id.* at ¶¶ 91, 121, 135, 153, 173, 191, 209, 224 and 245.

     [23] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678–

25   79 (2009); *see also* Fed. R. Civ. P. 8(d) ("Each allegation must be simple, concise, and direct.")

     [24] *Id.* at 570.

26   [25] *Id.* at 678.

     [26] *Twombly,* 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984))

27   (emphasis in original).

     [27] *Iqbal,* 556 U.S. at 678–79.

28   [28] *Id.*

     [29] *Id.* at 679.

1    the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[30]

2    A complaint that does not permit the court to infer more than the mere possibility of misconduct

3    has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[31]

4    **IV.    ARGUMENT**

5        The deficiencies in Plaintiff's complaint are as numerous as they are obvious. As an initial

6    matter, even under the most liberal interpretation of Plaintiff's allegations, Plaintiff has failed to

7    allege sufficient facts that marshals Jopalian, Hartz and Mazza affirmatively engaged in any of the

8    conduct underlying the claims at issue. Further, the majority of Plaintiff's claims share a single,

9    legally erroneous, theme: that Officer Guzman somehow acted beyond his authority by engaging

10    in the traffic stop in the first place. However, Officer Guzman had legal authority under the United

11    States Constitution, the Nevada Constitution, and state law for the stop and arrest. Thus, Plaintiff's

12    claims lack a legal basis to survive a motion to dismiss. As explained more fully below, because

13    Plaintiff fails to state legally viable claims for relief, his case should be dismissed.

14        **A.    <u>Plaintiff cannot assert claims that rely on an erroneous legal theory that City marshals lack authority and jurisdiction to conduct traffic stops and arrests.</u>**

15

16        Plaintiff asserts his first through ninth causes of action on the basis that the events involving

17    Plaintiff's stop and arrest were a byproduct of City marshals exceeding the scope of their authority

18    and jurisdiction as peace officers.[32] However, City marshals are legally able to make traffic stops

19    and resulting arrests, such as the ones at issue in this case, as a matter of law.

20        NRS 280.125(3)(b) provides that the territorial jurisdiction for marshals is limited to "[t]he

21    enforcement of state laws and city and county ordinances on real property owned, leased, or

22    otherwise under the control of the participating political subdivision." Consistent with state law,

23    Las Vegas Municipal Code ("LVMC") § 11.04.040 further provides that marshals are authorized

24    to enforce "all street traffic laws of the City and all of the State vehicle laws applicable to street

25    traffic in the City." In his Complaint, Plaintiff admits that Guzman alerted him to pull over as

26    Plaintiff was driving near Simmons Street and Holly Avenue.[33] This intersection of public streets

27    [30] *Id.*
      [31] *Twombly,* 550 U.S. at 570.

28    [32] *See, e.g.,* ECF No. 9 at ¶¶ 87, 105, 129, 140-141, 169, 178-179, 205, 213 and 228.
      [33] ECF No. 9 at ¶¶ 15-16.

is within city limits of the City and thus, owned and under the control of the City as contemplated by NRS 280.125 and LVMC § 11.04.040. Indeed, NRS 268.708 defines real property to include land, easements, and rights-of-way,[34] and NRS 361.035 defines real property to include all "improvements built or erected upon any land" including upon any such land of a municipality, city or town in this state.[35] Moreover, the Las Vegas City Charter—enacted by the State legislature—authorizes the City to maintain and improve all public rights-of-way in the City, and regulate all vehicular and other traffic within the City for the public safety on the public streets.[36] Accordingly, the events at issue occurred within the jurisdictional territory of the City and its City marshals as allowed by law.

Similarly, the stop and arrest were also within the authority of City marshals as contemplated by state and local laws. City marshals are peace officers under Nevada law.[37] Nevada law provides for three categories of peace officers.[38] Category II and III peace officers have restricted duties.[39] In contrast, Category I officers have unrestricted duties.[40] City marshals are Category I peace officers, so they have *unrestricted duties*.[41] In addition, NRS 171.124(a) sets forth the authority that peace officers have in certain instances. Specifically, a peace officer may, without a warrant, arrest a person for a public offense committed or attempted in the officer's presence.[42] Thus, peace officers like City marshals have legal authority to make an arrest for public offenses committed in their presence. NRS 171.124 contains no territorial jurisdictional limit. It only requires that the person effectuating the arrest is a peace officer, and the suspect committed a public offense in the officer's presence.[43]

---

[34] NRS 268.708(1) and (4); *see also* NRS 268.720, defining "street" as "any street … **or other public right-of-way** used for any vehicular traffic . . . . [Emphasis added]."
[35] NRS 361.035(1)(a).
[36] Las Vegas City Charter §§ 2.220(1) and 2.230(1).
[37] NRS 289.150(2).
[38] NRS 289.460-480.
[39] NRS 289.470-480.
[40] NRS 289.460.
[41] *See* NRS 289.460-480, NRS 289.150.
[42] NRS 171.124(a).
[43] Public offenses in Nevada are defined broadly, including any conduct prohibited by statute or ordinance. NRS 193.050. *See also State of Nevada v. Eighth Jud. Dist. Ct. of State of Nevada, ex rel. Cnty. of Clark,* 116 Nev. 127, 138, 994 P.2d 692, 699 (2000) (traffic infractions are offenses); NRS 199.280 (resisting/obstructing public officer is a violation of the law).

1    Here, Plaintiff alleges Guzman stopped him, and arrested him, for "not stopping at a stop

2    sign/stopping for emergency lights and…for obstructing and resisting."[44] These are public

3    offenses that violate State and City laws.[45] Plaintiff does not allege the relevant events happened

4    outside of Guzman's presence. Instead, Plaintiff concedes that the entirety of events occurred

5    before Guzman.[46] Thus, Guzman had legal authority to stop and arrest Plaintiff pursuant to NRS

6    171.124, NRS 280.125 and LVMC § 11.04.040. Plaintiff's underlying legal theory challenging the

7    jurisdiction and authority of Guzman (and City marshals generally) to stop and arrest him is

8    erroneous as a matter of law. Thus, this theory cannot serve as the basis of any of Plaintiff's claims.

9    **B.    Plaintiff's first and seventh claims for unreasonable search and seizure fail.**

10    Plaintiff broadly claims the individual marshal defendants violated his constitutional rights

11    when they "stopped, detained, searched, and arrested him, taking him to Las Vegas Detention

12    Center" without probable cause of a traffic violation, without reasonable suspicion of criminal

13    activity and "outside of the scope of Marshal Defendants authority as peace officers with limited

14    jurisdiction."[47] Plaintiff's unreasonable search and seizure claims are brought pursuant to the

15    Fourth Amendment (via § 1983) and Article I, Section 18 of the Nevada Constitution.[48]

16    The Fourth Amendment prohibits unreasonable searches and seizures.[49] A traffic stop by a

17    police officer is "a seizure within the meaning of the Fourth Amendment."[50] To assert a viable

18    claim, a plaintiff must allege that there was a search or seizure as contemplated by the Fourth

19    Amendment and that the search or seizure was unreasonable.[51] Article 1, Section 18 of the Nevada

20    Constitution uses almost identical language.[52] Since the protections parallel, the Court can analyze

21    these claims under the federal standard.[53]

---

22    [44] ECF No. 9 at ¶¶ 57-58.

23    [45] *See, e.g.,* LVMC § 11.50.040 (stop signs); LVMC 10.02.010 (failure to act); NRS 484B.257 (stop signs); NRS 484B.550 (failure to stop upon signal of peace officer); NRS 199.280 (resisting/obstructing public officer).

24    [46] ECF No. 9 at ¶¶ 16-47.
      [47] *See* ECF No. 9 at ¶¶ 85-87.

25    [48] ECF No. 9 at First Cause of Action and Seventh Cause of Action.
      [49] U.S. CONST. amend. IV.

26    [50] *United States v. Garcia*, 205 F.3d 1182, 1186 (9th Cir. 2000).
      [51] *Maryland v. Buie*, 494 U.S. 325, 331 (1990); *see also Hammond v. Nevada*, No. 2:24-cv-00310-JAD-EJY, 2024 WL 3721151, at *3 (D. Nev. Aug. 7, 2024).

27    [52] *See* Nev. Const. art. 1, § 18; *see also Cortes v. State*, 127 Nev. 505, 514, 260 P.3d 184, 190-91 (2011).

28    [53] *See Braxton v. Clark Cnty. Sch. Dist.*, No. 2:23-cv-00144-JAD-BNW, 2023 WL 11284282, at *2 (D. Nev. Nov. 8, 2023) (analyzing an Article I, Section 18 search and seizure claim under Fourth Amendment precedents "as other courts in the District of Nevada have done.")

Based on the facts asserted by Plaintiff in his Complaint, Plaintiff has not plausibly asserted a Constitutional claim for unreasonable search and seizure against the named marshals.

*First,* Plaintiff admits he "saw the flashing lights of Defendant Sergio Guzman," and later "pulled over" to stop.[54] Plaintiff further concedes that he was cited for running a stop sign and failing to stop for emergency lights.[55] Thus, Officer Guzman had a legitimate basis to stop Plaintiff because of Plaintiff's traffic infractions.[56] "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."[57] Here, Guzman had two reasons to stop Plaintiff: his running a stop sign and his failure to immediately pull over. Thus, any detention and/or seizure related to the stop was reasonable.[58]

*Second,* the only allegation Plaintiff makes tangentially related to a "search" is one sentence in passing that his pockets were emptied by Defendants Guzman, Mazza and Jopalian while he told them he was heading home from the airport.[59] Plaintiff does not allege this is the basis for his unreasonable search claim nor allege lack of consent. In other words, Plaintiff has not made sufficient factual allegations that he was searched let alone unreasonably searched. Nevertheless, it is a bedrock principle that a search of person incident to an arrest is reasonable.[60]

*Third,* Plaintiff admits that he repeatedly failed to follow Officer Guzman's instructions. Specifically, Plaintiff did not immediately pull over when Guzman activated his lights; once stopped, Plaintiff did not comply with Guzman's directive to roll down all of his vehicle windows and instead, challenged Guzman; Plaintiff rolled up his windows without permission; and Plaintiff argued with Guzman's instructions regarding where to go and what direction to face once Plaintiff exited the vehicle.[61] The Ninth Circuit has identified certain situations in which a person may be lawfully handcuffed during an investigatory stop, including "where the suspect is uncooperative

---

[54] ECF No. 9 at ¶¶ 16-17.

[55] *Id.* at ¶ 57.

[56] *Whren v. United States*, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *see also United States v. Wallace,* 213 F.3d 1216, 1219–20 (9th Cir. 2000) (the constitutionality of a traffic stop turns on whether there was an objective basis for the officer to believe that a traffic violation or some other infraction has been committed).

[57] *Whren,* 517 U.S. at 810.

[58] In addition, ordering a driver to exit his vehicle during a routine traffic stop does not violate the driver's Fourth Amendment rights. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977).

[59] ECF No. 9 at ¶ 46.

[60] *Chimel v. California,* 395 U.S. 752, 763 (1969).

[61] *Id.* at ¶¶ 23-31

1    or takes action at the scene that raises a reasonable possibility of danger or flight."[62] This is

2    precisely the scenario Plaintiff concedes in his Complaint.[63] Accordingly, Plaintiff has not

3    plausibly asserted an unlawful search and seizure claim based on his arrest, either.

4        *Finally,* as discussed in Section IV(A) above, Guzman, like any other City marshal, is

5    legally able to make traffic stops as a Category I Peace Officer in this state. Thus, Plaintiff's

6    jurisdictional basis to support his unlawful search and seizure claim also fails.

7        Based on Plaintiff's allegations that he ran a stop sign, failed to stop for flashing lights and

8    did not comply with Guzman's instructions, Guzman had reasonable suspicion to stop him and

9    there was probable cause for his arrest. Accordingly, Plaintiff has failed to state a claim for

10    unreasonable search and seizure under the U.S. and Nevada Constitutions.

11        **C.    <u>Plaintiff's third and eighth claims for prolonged detention fail.</u>**

12        Plaintiff concludes that the marshal defendants "prolonged Plaintiff's traffic stop well

13    beyond the time required to address any alleged traffic violations without any reasonable suspicion

14    that any other crimes had been committed by Plaintiff."[64] After Guzman pulled Plaintiff over for

15    a traffic violation, and after Plaintiff failed to follow Guzman's directions, Guzman arrested

16    Plaintiff.[65] From the time period beginning when Guzman flashed his signals, to the stop, to the

17    vehicle exit, to Plaintiff's non-compliance, to Plaintiff's arrest, to Plaintiff's transport to jail, and

18    then transport to the hospital, four hours passed, which Plaintiff alleges was improperly too long.[66]

19        As an initial matter, "prolonged detention" is not an independent cause of action. Instead,

20    it is a theory of liability for an unlawful seizure claim, as a seizure can become unlawful "if it is

21    prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for

22    the violation."[67] Accordingly, Plaintiff's third and eighth claims for prolonged detention are ripe

23    for dismissal because they are duplicative of his first and seventh claims for unreasonable search

---

[62] *Hartrim v. Las Vegas Metro. Police Dep't,* 603 Fed. Appx. 588, 588 (9th Cir. 2015) (quoting *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013)).

[63] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.)

[64] ECF No. 9 at ¶¶ 130, 220 (Plaintiff refers to "Marshal Defendants" to refer to the conduct of Officer Guzman.)

[65] *Id.* at ¶¶ 16-36.

[66] *Id.* at ¶¶ 15, 62, 131,

[67] *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (citation omitted).

1    and seizure. On that basis alone, this Court should dismiss both claims.

2         Even if Plaintiff had pled a prolonged detention theory of liability under his seizure claims,

3    Plaintiff's own facts do not support such a theory. "To be lawful, a traffic stop must be limited in

4    its scope: an officer may 'address the traffic violation that warranted the stop,' make 'ordinary

5    inquiries incident to the traffic stop,' and 'attend to related safety concerns.'"[68] "[A] stop 'may be

6    extended to conduct an investigation into matters other than the original traffic violation' so long

7    as 'the officers have reasonable suspicion of an independent offense.'"[69]

8         Here, it did not prolong the stop for Guzman to ask Plaintiff to exit the vehicle and place

9    his hands on the patrol car. An officer may do so in the interest of officer safety.[70] Given the

10   "inordinate risk confronting an officer as he approaches a person seated in an automobile," it was

11   objectively reasonable for Guzman to order Plaintiff to step outside of his car, particularly where

12   Plaintiff had failed to immediately stop.[71] Yet even if Guzman "prolonged the encounter beyond

13   the original mission of the traffic stop, [he] had a sufficient basis to do so"—namely, reasonable

14   suspicion of an independent offense.[72] Plaintiff's series of defiant conduct upon being stopped led

15   to a legal basis for arrest: resisting and obstructing.[73] In other words, Plaintiff's Complaint makes

16   clear there was probable cause for the stop and reasonable suspicion for the arrest. Therefore, there

17   was no prolonged detention in making the arrest and the subsequent related transport to jail. Thus,

18   Plaintiff's "prolonged detention" constitutional challenges fail.

19        **D.    Plaintiff's fifth and ninth claims for excessive force also fail.**

20        Plaintiff's fifth and ninth claims allege excessive force under the Fourth Amendment

21   (§1983) against the marshal defendants, and under the Nevada State Constitution against all

22

23

---

[68] *United States v. Taylor,* 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting *Rodriguez,* 575 U.S. at 354).

[69] *Taylor,* 60 F.4th at 1239 (quoting *United States v. Landeros,* 913 F.3d 862, 867 (9th Cir. 2019)).

[70] *See United States v. Ramirez,* 98 F.4th 1141, 1144 (9th Cir. 2024); *Mimms,* 434 U.S. at 110.

[71] *See Mimms,* 434 U.S. at 110.

[72] *See Taylor,* 60 F.4th at 1242; *see also United States v. Nault,* 41 F.4th 1073, 1081 (2022) (concluding that there was no prolongation of a stop until the point when reasonable suspicion attached and that "continued detention from that point on was supported by independent reasonable suspicion of a DUI").

[73] "The reasonable suspicion standard 'is not a particularly high threshold to reach' and is less than probable cause or a preponderance of the evidence." *Taylor,* 60 F.4th at 1241 (quoting *United States v. Valdes-Vega,* 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc)); *see also* NRS 199.280 (a person who "willfully resists, delays or obstructs a public officer in discharging" his duties "shall be punished.").

1  defendants, respectively.[74] The standard for claims under the Nevada Constitution and common

2  law assault and battery by a police officer mirror the federal civil rights law standard of reasonable

3  force under the circumstances.[75]

4      The right to make an arrest or investigatory stop necessarily carries with it the right to use

5  some degree of physical coercion or threat thereof to effect it.[76] Here, Plaintiff's own allegations

6  establish that he failed to comply and resisted, and necessary force ensued.[77] At a minimum,

7  Officer Guzman is entitled to qualified immunity on the § 1983 excessive force claim as no clearly

8  established law put him on notice that pointing his firearm, pressing his taser into Plaintiff's

9  backside and taking plaintiff to the ground might be unconstitutional under the circumstances after

10  a driver failed to immediately stop and then repeatedly defied orders.

11      The other marshal defendants – Hartz, Jopalian and Mazza – had no personal participation

12  in the alleged excessive force and cannot be held liable. Officers are generally not liable under the

13  Fourth Amendment for the conduct of other officers and are liable only where they are a "integral

14  participant" in the conduct that caused the constitutional violation.[78]

15      Mazza, Jopalian and Hartz all arrived on the scene *after* Plaintiff's arrest.[79] Mazza assisted

16  Guzman in getting Plaintiff off the ground and later transported Plaintiff to the Las Vegas

17  Detention Center.[80] Guzman, Mazza, and Jopalian collectively emptied Plaintiff's pockets at some

18  point.[81] Aside from arriving on scene and emptying Plaintiff's pockets, Plaintiff fails to allege that

19  Jopalian engaged in any other specific activity. Further, Hartz had a conversation with Guzman,

20  though Plaintiff did not hear the conversation.[82] There are no other specific allegations against

21  Hartz. Accordingly, Plaintiff fails to allege that Mazza, Jopalian or Hartz were integral participants

22  in the conduct that allegedly caused constitutional violations. Absent any liability as to the

---

[74] ECF No. 9 at ¶¶ 155-174 and ¶¶ 226-246.
[75] *See Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996).
[76] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[77] ECF No. 9 at ¶ 57 (failed to stop for emergency lights); ¶ 23 (challenged Guzman when directed to roll down his windows), ¶¶ 25-27 (rolled up windows "without permission"); ¶¶ 27-28 (challenged directive of where to go and where to look).
[78] *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014).
[79] ECF No. 9 ¶¶ 36, 40-41, 45-49.
[80] *Id*. at ¶¶ 44, 61.
[81] *Id*. at ¶ 46.
[82] *Id*. at ¶ 60.

individual marshals, the City similarly cannot be held liable under Plaintiff's state claim. For all of the foregoing reasons, Plaintiff's fifth and ninth claims must be dismissed.

### E.    Each of Plaintiff's three *Monell* claims should be dismissed.

Local governments can be sued directly under § 1983 only if they maintain a policy or custom that results in a violation of the plaintiff's constitutional rights.[83] To impose *Monell* liability under § 1983, a plaintiff must show that: 1) the plaintiff possessed a constitutional right and was deprived of that right; 2) the municipality had a policy; 3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and 4) the policy was the moving force behind the constitutional violation.[84] The Ninth Circuit has explained that a policy may be established by showing: 1) a long-standing practice that constitutes a "standard operating procedure" of the local government; 2) by showing a decision-making official was a final policymaking authority whose acts represented an official policy in the area of the decision; or 3) by showing an official with final policymaking authority ratified or delegated a decision of a subordinate.[85]

Here, Plaintiff asserts three *Monell* claims against the City via his second, fourth and sixth causes of action. In conclusory fashion, Plaintiff's *Monell* claims allege Fourth Amendment violations for unlawful search and seizure (second claim); prolonged detention (fourth claim); and excessive force (sixth claim). Yet the pleading standard for *Monell* claims is the same for all claims. Plaintiff should not be allowed to plead conclusory *Monell* allegations to bypass the pleading stage and go on an improper fishing expedition for *Monell* discovery.[86] Instead, "[a]llegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[87]

---

[83] *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690–91 (1978).

[84] *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

[85]*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)); *accord, e.g., Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss).

[86] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true [in *Monell* claims] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."

[87] *Id*.

1

           **1.**    <u>Plaintiff does not identify a specific, widespread policy.</u>

2

      An actionable policy or custom can be demonstrated by an "express policy that, when

3

enforced, causes a constitutional deprivation."[88] The custom must be so persistent and widespread

4

that it constitutes a "permanent and well settled city policy."[89] "Isolated or sporadic incidents," by

5

contrast, will not support *Monell* liability against a municipality.[90]

6

      Here, in each of his *Monell* claims, Plaintiff alleges that the City is liable "pursuant to a

7

policy or custom which instructed, allowed and trained members of the Marshal Defendants" to

8

conduct traffic stops, prolong traffic stops, use excessive force, and conduct "other police activities

9

exceeding the permissible scope of the Marshals authority."[91] Plaintiff also pleads a *lack* of policy,

10

stating that "Defendants failed to adopt clear policies … as to [marshals'] proper role as peace

11

officers with limited jurisdiction."[92]

12

      As discussed in section IV(A) above, the ability for City marshals to conduct traffic stops

13

is authorized by state and local law; thus, there is no underlying deprivation of a constitutional

14

right to support a *Monell* claim based on the City's legal conduct. To the extent Plaintiff alleges

15

the City has an independent policy or custom contrary to the law with respect to marshal authority

16

or jurisdiction, Plaintiff has failed to identify an express policy and in fact, alleges the City has ***not***

17

adopted clear policies on this issue. Moreover, as to how the City conducts searches and seizures,

18

or allegedly prolongs traffic stops and/or uses excessive force, again, Plaintiff has not articulated

19

a specific policy supporting his blanket statements. Instead, Plaintiff relies on the single incident

20

when he was pulled over for failing to stop at a stop sign and arrested. Yet failing to identify an

21

actual City policy and instead relying upon a single incident to allege a *Monell* policy, custom or

22

practice is insufficient as a matter of law to maintain a *Monell* claim.[93] Thus, Plaintiff's *Monell*

23

claims are ripe for dismissal.

24

25

    [88]*Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).
    [89]*Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

26

    [90]*Id.*
    [91] ECF No. 9 at ¶¶ 110, 142 and 180.

27

    [92] *Id.* at ¶¶ 11, 143 and 181.
    [93]*See, e.g., Montoya v. Smith*, No. 2:16-cv-00032-JAD-VCF, 2016 WL 3511185, at *5 (D. Nev. June 27, 2016)

28

    (Under *Monell*, a single instance of misconduct does not establish a municipal custom, and a conclusory allegation
    of "numerous instances" of other similar conduct "lacks the factual content that *Iqbal* requires.").

### 2.    Plaintiff does not plead *Monell* ratification.

To plead a *Monell* claim through ratification, a plaintiff must allege that an authorized policymaker(s) approved a subordinate's decision and the basis for it.[94] Specifically, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it."[95] The ratification doctrine also requires that a subordinate's actions be cast in the form of a policy statement and **expressly** approved by the supervising policymaker.[96]

Plaintiff does not allege that any named defendant marshal, or anyone from the City for that matter, was a decision-making official with final policy-making authority. Instead, Plaintiff pleads that Jopalian and Hartz were supervisors who "failed to remedy and halt" purported constitutional violations when they arrived on the scene ***after*** Plaintiff's stop and arrest, constituting ratification.[97] Thus, Plaintiff's ratification assertion fails because: 1) plaintiff does not allege Jopalian or Hartz were officials with final policymaking authority and 2) even if they did, a "failure to remedy and halt" alleged constitutional violations does not equate to knowledge of any purported misconduct, or an express approval of such conduct.

Because Plaintiff does not plead a longstanding custom or policy, fails to identify a decision-making official with final policymaking authority, and fails to allege an official with final policymaking authority ratified Guzman's alleged misconduct, dismissal is required.

### 3.    Plaintiff does not plead causation or deliberate interference.

A plaintiff must show an affirmative link between a policy or custom and the alleged constitutional violation.[98] Causation must be specific to the violation alleged, meaning that merely proving an unconstitutional policy, practice, or custom, however loathsome, will not establish liability unless the specific injury alleged relates to the specific unconstitutional policy proved.[99] Once each of these elements are met, a plaintiff must further prove that the policy that caused his

---

[94] *Patino v. Las Vegas Metro. Police Dep't*, 207 F. Supp. 3d 1158, 1167 (D. Nev. 2016), *aff'd*, 706 F. App'x 427 (9th Cir. 2017) (citing *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).
[95] *Id.*
[96] *Wells v. City of Las Vegas*, No. 2:21-cv-1346-JCM-EJY, 2024 WL 2028007, at *15 (D. Nev. May 7, 2024) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).
[97] ECF No. 9 at ¶¶ 114-117, 146-149, and 184-187.
[98] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).
[99] *Board of County Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

injury was the result of something more than mere negligence on the part of the municipality and was instead the result of "deliberate indifference" – a state of mind that requires a heightened level of culpability, even more than mere "indifference."[100]

Plaintiff's Complaint alleges a single, conclusory statement to support the final two elements of his *Monell* claims: that "Defendant's policy or custom, and its failure to adopt clear policies and failure to properly train its officers, was a direct and proximate cause of the constitutional deprivations suffered by Plaintiff."[101] In no shape or form does this allegation sufficiently meet Plaintiff's pleading obligations. Indeed, courts routinely dismiss *Monell* claims that fail to allege facts and are only made up of conclusory allegations, such as Plaintiff's.[102] Conclusory statements and/or recitation of elements of a claim cannot withstand a motion to dismiss. Because Plaintiff has not shown the final two elements of a *Monell* claim: that a purported policy "amounts to deliberate indifference" of his rights and that the policy is the "moving force" behind an alleged constitutional violation, Plaintiff's *Monell* claims fail.

### F.  The defendant marshals are shielded by qualified immunity.

The Section 1983 claims against the marshal defendants should also be dismissed because they are shielded by qualified immunity.[103] A plaintiff may not recover damages against an official in a 42 U.S.C. § 1983 action if qualified or "good faith" immunity applies to the official's actions.[104] Indeed, officers are entitled to qualified immunity under Section 1983 unless: 1) they violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time.[105] "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful."[106] In other words, existing law must have placed the

---

[100] *Id.* at 411.
[101] ECF No. 9 at ¶¶ 112, 144 and 182.
[102] *See Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal because "Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that [Plaintiff's] constitutional deprivation was the result of a custom or practice of the [Municipality] or that the custom or practice was the 'moving force' behind the constitutional deprivation.").
[103] *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (complaint dismissal due to qualified immunity appropriate).
[104] *Gomez v. Toledo*, 446 U.S. 635, 639 (1980).
[105] *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018).
[106] *Id.* at 63 (internal citations omitted).

1    constitutionality of the officer's conduct "beyond debate."[107]

2    As set forth above, Plaintiff fails to articulate facts establishing that the marshal defendants

3    violated his Fourth Amendment rights as Guzman's stop, search and arrest were reasonable under

4    the circumstances pled by Plaintiff. Further, Plaintiff's allegation that the marshal defendants did

5    not have jurisdiction fails, especially in light of the plethora of Nevada statutes granting peace

6    officers authority to make traffic stops and arrests in certain circumstances. [108] In addition, Plaintiff

7    failed to plead sufficient facts demonstrating that Guzman's conduct was clearly established as

8    unlawful. [109] Plaintiff's own allegations support that he committed offenses in Guzman's presence

9    that led to his arrest. Accordingly, Plaintiff failed to plead facts sufficient to overcome the marshal

10   defendants' qualified immunity.

11   ### G.  Plaintiff's claims based on the Nevada Constitution and State law must be dismissed as the marshal defendants are entitled to discretionary immunity.

12

13   This Court should also dismiss Plaintiff's claims for unreasonable search and seizure

14   (claim 7), prolonged detention (claim 8) and excessive force (claim 9) which are based upon the

15   Nevada Constitution as well as his state tort claims (claims 10 and 12) because the marshal

16   defendants are entitled to discretionary immunity under NRS 41.032(2). An officer's decision to

17   stop, detain, search and arrest are a discretionary function under Nevada law.

18   A person cannot maintain an action against an officer or employee of Nevada "[b]ased

19   upon the exercise of performance or the failure to exercise or perform a discretionary function or

20   duty on the part of the State or any of its agencies … or of any officer … ***whether or not the***

21   ***discretion involved is abused***."[110]  Nevada's discretionary-function statute mirrors the Federal Tort

22

23   ---
     [107] *Id*. (internal citations omitted).

24   [108] If anything, Plaintiff's selective references to NRS 280.125 legislative history further establishes that
     unlawfulness is not "clearly established." Courts typically only examine legislative history if the statutory language
     is ambiguous and susceptible to more than one meaning. *Heppner v. Alyeska Pipeline Service Co*., 665 F.2d 868,

25   871 (9th Cir. 1981) ("When the meaning of statutory language is unclear, one must look to the legislative history.").
     [109] *See, e.g., Foley v. Graham*, No. 2:16-cv-01871-JAD-VCF, 2020 WL 4736457, at *3 (D. Nev. Aug. 14, 2020)

26   (qualified immunity applied to excessive force claim where plaintiff failed to plead that he informed the officer he
     was in pain, as is the case here, where Plaintiff pleads in paragraph 35 of the Complaint that he was "in pain" not

27   that he told Guzman he was in pain.); *Montoya*, 2016 WL 3511185, at *8 ("Qualified immunity is no immunity at all
     if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.")
     (citation omitted).

28   [110] NRS 41.032(2) (emphasis added).

Claims Act ("FTCA"), so Nevada law looks to federal law relating to the FTCA for guidance on what type of conduct is protected by NRS 41.032.[111]

In *Berkovitz* and *Gaubert*, the United States Supreme Court proffered a two-part test to guide courts in determining whether actors have discretionary immunity from FTCA claims.[112] In *Martinez*, the Nevada Supreme Court explicitly adopted that test as it relates to Nevada's discretionary-function immunity statute, NRS 41.032.[113] Under the *Berkovitz-Gaubert* test, an act is entitled to discretionary immunity if: (1) the act involves elements of judgment or choice; and (2) the act is based on considerations of public policy.[114]

Nevada's discretionary-function immunity exception protects state agency decisions concerning the scope and manner in which state agencies conduct various acts.[115] A court does not ask whether the official abused his or her discretion; but only whether the acts concerned a matter in which the official had discretion. In other words, the immunity is not infinitely broad, but once it is determined that the acts involved judgment or choice on social, economic, or political policy considerations, the immunity applies even to abuses of discretion.[116]

In Nevada, the decision of a police officer to effectuate an arrest is a discretionary decision entitled to immunity under NRS 41.032(2). An officer's decision as to how to accomplish a particular seizure or search is considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases.[117] This Court has affirmed on numerous occasions that police officers in Nevada are entitled to discretionary function immunity under NRS 41.032 in conducting an investigation and effectuating an arrest so long as the officer does not violate a mandatory directive in doing so.[118] Only "decisions made in bad faith, such as 'abusive' conduct resulting from 'hostility' or

---

[111] *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007).

[112] *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988); *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

[113] *Martinez*, 123 Nev. at 445, 168 P.3d at 728-29.

[114] *Id*.

[115] *See Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 938 (D. Nev. 2012) (citation omitted).

[116] *Belch v. Las Vegas Metro. Police Dep't.*, No. 2:10-CV-00201-GMN, 2011 WL 1070175, at *4 (D. Nev. 2011).

[117] *See Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23 (1998) (no civil liability for officer's discretionary decision to arrest driver for allegedly refusing to sign a traffic ticket—immunity under NRS 41.032(2) applied).

[118] *See, e.g., Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860 (D. Nev. 2012), *aff'd in part, rev'd in part*, 756 F.3d 1154 (9th Cir. 2014); *see also Napouk v. Las Vegas Metro. Police Dep't*, 669 F. Supp. 3d 1031 (D. Nev. 2023) (whether to detain or arrest a suspect and how to do so are discretionary functions of the police

'willful or deliberate disregard' for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function."[119]

Here, Guzman is immune from liability with respect to his discretionary decision to arrest Plaintiff and to conduct a search incident to arrest.[120] Specifically, the decision to stop Plaintiff for traffic infractions, arrest him for obstructing/resisting, and use necessary force in the process, are precisely the types of decisions subject to discretionary immunity based on individual judgment and public policy considerations including public safety.[121] Likewise, Guzman's decision to conduct a search incident to arrest here was discretionary because it involves an element of judgment or choice and is based on considerations of public policy, namely the need to determine whether Plaintiff was armed or otherwise posed a threat to officer safety. While there are limitations on discretionary-act immunity for actions taken in bad faith and acts taken in violation of the Constitution, Plaintiff has not alleged any such facts here.[122] Furthermore, the City's training and supervision of marshals is a discretionary function. Based on the foregoing, Plaintiff's tort law claims and Nevada constitutional claims should be dismissed.

### H. Plaintiff's intentional tort claims against the marshal defendants independently fail.

Plaintiff alleges intentional tort claims against the marshal defendants for: 1) false arrest and imprisonment; 2) assault and battery; and 3) intentional infliction of emotional distress. For each, Plaintiff improperly lumps together Guzman, Jopalian, Hartz and Mazza in his reference to them as "Marshal Defendants."[123] As pled, none of the individual marshal defendants have any idea how they supposedly falsely arrested or assaulted Plaintiff, or intentionally inflicted emotional

---

department); *see also Mitchell v. Las Vegas Metro. Police Dep't.,* No. 2:17-CV-2188 JCM (GWF), 2018 WL 1568670 (D. Nev. 2018) (officer's decision to arrest met the two factors of the discretionary immunity test).
[119] *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017).
[120] As established above, including in Section IV(D), Mazza, Jopalian and Hartz did not arrive on the scene until *after* Plaintiff's arrest and therefore, cannot be held liable for conduct they did not participate in.
[121] *Bruins v. Osborn*, No. 2:15-cv-00324-APG-VCF, 2016 WL 697109, at *9 (D. Nev. Feb. 19, 2016) (decisions by officer to pull over plaintiff's car and ultimately arrest plaintiff is entitled to discretionary immunity "because these decisions are discretionary and based on policy considerations of enforcing the criminal laws."); *Napouk v. Las Vegas Metro. Police Dep't,* 123 F.4th 906, 924 (9th Cir. 2024) (plaintiff could not maintain battery claim against officer where discretionary immunity applied).
[122] *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) ("where an officer's actions are 'attributable to bad faith, immunity does not apply whether an act is discretionary or not.'").
[123] ECF No. 9 at ¶¶ 250 and 278.

distress.[124] Moreover, Plaintiff's reference to some elements of each claim, but failure to allege facts to support each theory, warrants dismissal of each claim.

### 1.    Plaintiff's Complaint confirms probable cause for the arrest and detention.

Under Nevada law, claims for false arrest and false imprisonment require the plaintiff to show that the defendant lacked probable cause.[125] In his tenth claim for relief asserted against the individual officers, Plaintiff merely recites this element of the claim, concluding that the Marshal Defendants arrested and detained him "without any legal cause or justification."[126] Yet the actual facts pled in the Complaint do not support Plaintiff's conclusory allegation. Specifically, Plaintiff admits that: 1) he was stopped for running a stop sign; 2) he did not immediately pull over when Officer Guzman signaled his lights; 3) he repeatedly failed to follow Officer Guzman's instructions once pulled over; and 4) he was arrested for obstruction and resisting arrest.[127] Plaintiff therefore concedes that the arrest was due to his obstruction and resisting, which confirm probable cause for his arrest. Accordingly, this claim against the marshal defendants must be dismissed.

### 2.    Plaintiff fails to assert viable assault and battery claims.

In Nevada, civil assault and civil battery are two distinct claims, though Plaintiff pleads them as one. To establish an assault claim, a plaintiff must show "that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact."[128] In contrast, to establish a claim for battery, a plaintiff must show an "intentional and offensive touching of a person who has not consented to the touching."[129] Under Nevada law, a police officer is privileged to use the amount of force that is reasonably necessary.[130] In the context of a lawful arrest, a plaintiff has only suffered a battery if the use of force was more than is reasonably necessary.[131] Here, the Complaint is devoid of any facts to establish either claim.

---

[124] *LaPeer v. City of Henderson*, No. 2:24-cv-00332-GMN-EJY, 2024 WL 3639922, at *6 (D. Nev. Aug. 1, 2024) ("Rule 8 requires plaintiffs to 'indicate which defendant was allegedly responsible for which wrongful act and to provide well-pleaded factual allegations in support of each cause of action.'") (citation omitted).
[125] *O'Shaughnessy v. United States*, No. 2:22-cv-01039-WQH-EJY, 2023 WL 8018292, at *11 (D. Nev. 2023).
[126] ECF No. 9 at ¶ 252.
[127] *Id.* at ¶¶ 16-17, 23, 27-28, 30-31, 57-58.
[128] *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001).
[129] *Humbolt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 132 Nev. 544, 549, 376 P.3d 167, 171 (2016).
[130] *Plank v. Las Vegas Metropolitan Police Dep't*, 2016 WL 1048892, at *9 (D. Nev. Mar. 14, 2016) (citing *Yada v. Simpson*, 112 Nev. 254, 256-7, 913 P.2d 1261, 1262 (1996) (superseded on other grounds)).
[131] *Id.*

As for assault, Plaintiff does not allege he was "put in apprehension" of any harmful or offensive contact, nor does he claim Guzman (or any other marshal) *intended* to cause him harm. Absent these fundamental allegations, Plaintiff fails to plead a viable assault claim.

Regarding Plaintiff's battery claim, the Complaint lacks facts to support the basic elements of the claim. Plaintiff does not assert Guzman's conduct was intentional, nor a lack of consent. Instead, like his assault assertion, Plaintiff merely states legal elements of the claim but does not assert supporting facts. As a result, Plaintiff has failed to assert a plausible battery claim.

3.     <u>Plaintiff fails to assert a viable IIED claim against the marshals.</u>

To state an IIED claim under Nevada law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) the plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation."[132]

As to Jopalian, Hartz and Mazza, the universe of facts pled about the specific conduct of these officers is that: 1) they arrived at the scene after Plaintiff's arrest; 2) Mazza helped lift Plaintiff; 3) Mazza and Jopalian emptied Plaintiff's pockets; 4) Hartz had an iaudible conversation with Guzman; and 3) Mazza drove Plaintiff to jail.[133] None of this conduct, taken together or separately, comes anywhere close to the extreme and outrageous standard required to support an IIED claim. Thus, Plaintiff cannot maintain his IIED claim against Jopalian, Hartz or Mazza.

Further, the conduct Plaintiff attributes to Guzman surrounding his stop and arrest also cannot be considered conduct so "outside the bounds of all possible decency" and "utterly intolerable in a civilized community" to maintain an IIED claim.[134] Plaintiff avers that Guzman drew his fire arm, shouted instructions to Plaintiff, pulled his wrists behind his back, shoved and pinned Plaintiff, placed a taser into Plaintiff's side, forcefully put Plaintiff on the ground, left Plaintiff on the ground for three minutes, and then pulled him up from the ground.[135] Yet the Ninth Circuit has found that similar conduct during a traffic stop – where a driver did not resist, like

---

[132] *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 91–92 (1981).
[133] ECF No. 9 at ¶¶ 41, 44, 46, 49 and 61.
[134] *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (1998).
[135] ECF No. 9 at ¶¶ 27, 30, 32-34, 43-44

Plaintiff – was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," to maintain an IIED claim.[136] Accordingly, Plaintiff does not plead a viable IIED claim against Guzman and this claim should be dismissed.

## I.    The City is not liable for the alleged intentional torts.

Plaintiff alleges three intentional tort claims against the City: 1) false arrest and imprisonment; 2) battery and assault; and 3) intentional infliction of emotional distress. The marshal defendants' conduct is the underlying basis for these claims. Plaintiff asserts liability on the City under the sole theory that as the marshal defendants' employer, the City should have "reasonably foreseen" they would "engage in false arrests and imprisonments," "batter and assault Plaintiff," and "inflict emotional distress on Plaintiff."[137] Plaintiff concludes that the City is vicariously liable for the marshals' alleged intentional torts.[138]

As an initial matter, as discussed in Section IV(H) above, absent facts to support that any of the marshal defendants committed the underlying intentional torts of false arrest/imprisonment, battery and assault, or intentional infliction of emotional distress, it necessary follows that the City cannot be held liable for these claims when the conduct of the marshals was lawful. Indeed, "a municipal employer cannot be vicariously liable in the absence of unlawful conduct."[139]

In addition, Plaintiff has not sufficiently alleged facts to impute liability on the City. The sole basis Plaintiff relies upon to hold the City liable for the marshal's purported intentional torts is the conclusory allegation that their conduct was "foreseeable."[140] Yet the Complaint lacks any facts to support this blanket allegation as to how each of the marshal's specific conduct as it relates to each intentional tort was foreseeable *to the City*. Courts regularly dismiss such conclusory statements alleging employer liability based on foreseeability because they "fail to meet the pleading standard required."[141]

---

[136] *Ready v. City of Mesa*, 89 F. App'x 14, 17 (9th Cir. 2004) (during traffic stop, officer not liable for IIED where he drew and pointed his gun at plaintiff, handcuffed him, locked him in a patrol car, searched plaintiff, and prolonged plaintiff's detention).
[137] ECF No. 9 at ¶¶ 258, 272 and 286.
[138] *Id.* at ¶¶ 259, 273 and 287.
[139] *Triolo v. Nassau Cnty.*, 24 F.4th 98, 110 (2d Cir. 2022).
[140] *Id* at ¶¶ 258, 272, and 286.
[141] *Shaw v. NP Santa Fe, LLC*, No. 2:18-CV-515 JCM (PAL), 2018 WL 6419293, at *4 (D. Nev. Dec. 6, 2018).

1    In sum, as alleged in Plaintiff's Complaint, Plaintiff fails to state any claim that the

2    marshals committed the alleged intentional torts toward Plaintiff and therefore, the City cannot be

3    held liable for their lawful conduct. Further, there are zero facts to support Plaintiff's conclusory

4    statement that it was foreseeable the "Marshal Defendants" would engage in the aforementioned

5    intentional torts. Thus, each of these claims against the City should be dismissed.

6         **J.        Plaintiff's negligent training/supervision claim fails.**

7         In his sixteenth claim for relief, Plaintiff theorizes that the City is liable for negligent

8    training and supervision but does not plead facts that support his theory. The sum and substance

9    of Plaintiff's claim is that the City had a duty to use reasonable care in the "training, supervision,

10   and retention of the City's employees by implementing policies and procedures designed to

11   prevent wrongful acts committed by the City's employee's such as the acts Marshal Defendants

12   committed against Plaintiff."[142]  In asserting breach of this duty, Plaintiff claims the City did not

13   implement unspecified policies related to the unidentified acts of "City employees."

14        As set forth above, NRS 41.032 immunizes state officers, agencies, and political

15   subdivisions from actions "based upon the exercise or performance or the failure to exercise or

16   perform a discretionary function or duty on the part of the State or any of its agencies or political

17   subdivisions ... whether or not the discretion involved is abused."[143] Any trainings involving City

18   employees generally, and City marshals specifically, regarding how they perform their job duties

19   would fall squarely under the immunities of NRS 41.032.[144]

20        Again, Nevada has adopted the *Berkovitz-Gaubert* test when analyzing discretionary-act

21   immunity.[145] The Nevada Supreme Court has noted that training decisions regarding officer

22   conduct generally "involve an element of choice," and that these decisions involve "the evaluation

23   of economic, social and political considerations" because they involve determining whether the

24   training policies are sufficient to meet the community's needs.[146] The Ninth Circuit and Nevada

25

26   [142] ECF No. 9 at ¶ 292.
     [143] NRS 41.032(2).

27   [144] *See, e.g., Ward v. City of Henderson, Nevada*, No. 2:20-cv-02331-JAD-NJK, 2021 WL 2043937, at *4 (D. Nev. May 21, 2021) ("Nevada law accords the City broad immunity … based on … a discretionary function … which generally includes the hiring and managing of employees.").

28   [145] *Martinez*, 123 Nev. at 446, 168 P.3d at 729.
     [146] *Miller v. Nye Cnty.*, 488 F. Supp. 3d 973, 981 (D. Nev. 2020) (citing *Paulos v. FCH1, LLC*, 136 Nev. 18, 456

district courts routinely hold that "decisions relating to the hiring, training, and supervision of employees usually invoke policy judgments of the type Congress intended the discretionary function exception to shield."[147] Thus, the City's alleged failure to implement policies to prevent wrongful acts by its employees "squarely meet both elements of the *Berkowitz-Gaubert* test."[148] Therefore, the City is immune from Plaintiff's negligent training and supervision claim.[149]

### K.   Plaintiff cannot recover punitive damages against the City.

Plaintiff seeks an award of punitive damages against the City for his *Monell* claims and his state constitutional claims.[150] However, punitive damages are not available against the City for *Monell* claims because municipalities are immune from punitive damages for claims brought under 42 U.S.C. § 1983.[151] Further, as a political subdivision of the State of Nevada, the City is exempt from punitive damages for state constitutional claims.[152] Therefore, Plaintiff's claims for punitive damages against the City should be dismissed as a matter of law.

### L.   Plaintiff's claim for attorneys' fees as special damages fails.

Plaintiff requests attorney fees as special damages pursuant to *Sandy Valley Associates v. Sky Ranch Estates Owners Association*, 117 Nev. 948, 35 P.3d 964 (2001).[153] *Sandy Valley* is Nevada's "flagship case addressing attorney fees as an element of special damages."[154] The Nevada Supreme Court explained that attorney's fees may be recovered either as a "cost of litigation" authorized by "agreement, statute, or rule"; or as special damages, pleaded as an element of a party's cause of action.[155] The court identified three scenarios wherein attorney's fees may be recovered as special damages: (1) when they foreseeably arise "from tortious conduct or breach of contract," (2) "in recovering real or personal property acquired through the wrongful conduct of

P.3d 589, 595 (2020)).

[147] *Vickers v. United States,* 228 F.3d 944, 950 (9th Cir. 2000) (citing cases); *Ramirez v. Clark County,* 2011 WL 3022406 (D. Nev. 2011) ("Defendants are immune from suit pursuant to NRS 41.032 for their supervision and training"); *Beckwith v. Pool,* 2013 WL 3049070, at *6 (D. Nev. 2013) (discretionary function immunity bars claims for negligent hiring, training and supervision).
[148] *Miller,* 488 F. Supp. 3d at 981.
[149] Plaintiff does not allege that the City acted in bad faith in its training or supervision, underscoring why discretionary immunity precludes this claim. *See Ward,* 2021 WL 2043937, at *4.
[150] ECF No. 9 at ¶¶ 121, 153, 191, 209, 224 and 245.
[151] *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271 (1981).
[152] NRS 41.035(1); *Eggleston v. Stuart,* 137 Nev. 506, 514, 495 P.3d 482, 491 (2021).
[153] *See* ECF No. 9 at 34, ¶ 296.
[154] *Mitchell v. Nype,* 138 Nev. 967, 517 P.3d 905, 2022 WL 4482024, at *4 (2022) (unpublished table decision).
[155] *Sandy Valley*, 117 Nev. at 956, 35 P.3d at 969.

the defendant or in clarifying or removing a cloud upon the title to property," (3) or in "actions for declaratory or injunctive relief ... when the actions were necessitated by the opposing party's bad faith conduct ...."[156] However, a request for attorney fees is not a separate cause of action. Declaratory relief, injunctive relief, and attorney's fees are remedies, not causes of action or independent grounds for relief.[157]

Here, Plaintiff did not plead special damages as an element of a cause of action, he pled attorneys' fees as an entirely separate cause of action. Because attorneys' fees are not a separate cause of action, this Court should dismiss this "cause of action" in its entirety.

Furthermore, Plaintiff's "cause of action" is speculative and lacks any allegations of bad faith. Plaintiff alleges that the City knew or should have known they were operating outside of their legal jurisdiction and made an incomplete allegation regarding the City's website. Yet, as discussed at length above, pursuant to NRS 280.125, NRS 289.150 and NRS 171.124, the City's marshals had legal authority to stop, detain, search and arrest Plaintiff. Moreover, while scenario three under *Sandy Valley* provides that a Court may allow fees for injunctive or declaratory relief, Plaintiff has failed to allege any elements warranting injunctive relief such as ongoing harm or likelihood of reoccurrence.  Thus, Plaintiff's cause of action for attorneys' fees must be dismissed.

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss in its entirety.

DATED this 12th day of June, 2025.

JEFFRY M. DOROCAK
City Attorney

By:    /s/ *Paul Mata*
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for CITY DEFENDANTS

---

[156] *Id.* at 969–970.
[157] *See In re Wal–Mart Wage & Hour Emp't. Practices Litig.,* 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007).