JACOB T. S. VALENTINE, ESQ. (16324)
CHRISTOPHER M. PETERSON, ESQ. (13932)
**AMERICAN CIVIL LIBERTIES**
**UNION OF NEVADA**
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3212
Emails: jvalentine@aclunv.org
            peterson@aclunv.org
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **Lance Downes-Covington**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**City of Las Vegas**, a political subdivision of the state of Nevada; **Sergio Guzman**, in their individual capacity; **Sarkis Jopalian**, in their individual capacity; **Paul Hartz**, in their individual capacity; **Janelle Mazza**, in their individual capacity; and **Doe Las Vegas City Marshals 1-10**, in their individual capacity,<br><br>Defendants. | Case No.: 2:25-cv-737-JAD-BNW<br><br>**Opposition to Defendants' Motion to Dismiss** |

Plaintiff Lance Downes-Covington, through counsel, submits the following opposition to Defendants' Motion to Dismiss. Opposition is made pursuant to LR 7-2 and based on the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument made in support of this motion.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  Legal standard**

3

A motion to dismiss "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

4

732 (9th Cir. 2001). A court may dismiss a plaintiff's complaint for "failure to state a claim upon

5

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint

6

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

7

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*,

8

550 U.S. 544, 570 (2007)). When considering a 12(b)(6) motion to dismiss, the Court must accept

9

as true all material allegations in the complaint as well as all reasonable inferences that may be

10

drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150, n. 2 (9th Cir. 2000). The

11

Court must also construe the allegations of the complaint in the light most favorable to the

12

nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). While it is true that,

13

in light of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must state "plausible"

14

claims, that does not require a court to determine whether facts alleged are in fact true when

15

considering a motion to dismiss. As the majority explained in Iqbal:

16

> [A] court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than conclusions, are not

17

> entitled to the assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual allegations.

18

> When there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement

19

> to relief.

20

*Iqbal*, 556 U.S. 662 at 679; *see also Twombly*, 550 U.S. at 555 (complaint should be evaluated "on

21

the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). "And,

22

of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

23

of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S.

24

at 556 (citation and quotation marks omitted).

## II. Legal argument

This case is about the unconstitutional stop, arrest, and unlawful use of force by a police organization operating well beyond its legally allowable jurisdiction. *See* First Amended Complaint, ECF No. 9 (May 30, 2025). Defendants seek to dismiss this case, but Plaintiff's First Amended Complaint must survive Defendants' Motion to Dismiss as the Motion to Dismiss frequently asks this Court to make conclusions in favor of Defendants regarding contested issues of fact, which is not justifiable at this early stage. Defendants' Motion to Dismiss, ECF No. 10 (June 12, 2025). Additionally, Plaintiff has adequately plead that the Las Vegas City Marshals are acting in excess of their statutorily limited jurisdiction, that the Marshals and the City of Las Vegas violated Plaintiff's rights under both the Nevada and U.S. constitutions, that the Marshals are liable for multiple torts committed against Plaintiff, that the city is vicariously liable for said torts, and that the City was negligent in its handling of the Las Vegas City Marshals.

### A. Plaintiff does not admit that he violated any traffic laws, and whether a traffic violation occurred is an issue of fact that must be construed in favor of Plaintiff.

For the purpose of a motion to dismiss, pleadings are construed in the light most favorable to the non-moving party. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curium). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Rae v. Union Bank*, 725 F.2d 478, 479 (9th Cir. 1984). Here, Defendants have not established from the pleadings, when construed in a light most favorable to Plaintiff, the basis for a motion to dismiss. Instead, Defendants' Motion to Dismiss relies upon misinterpretations of the facts alleged in Plaintiff's First Amended Complaint which are molded to support Defendants' motion to dismiss.

1    Throughout the Motion to Dismiss, Defendants claim that Plaintiff admitted to the allegations

2    contained within the traffic citation Plaintiff received on the date of the incident. *See e.g.* ECF No.

3    10 at 2:22-4:1 and 8:3-9:3. Plaintiff does not, and has never, admitted to violating any laws relevant

4    to this matter. Plaintiff only refers to the citation he received within the pleadings to establish what

5    allegations the citation contained, he does not claim that the allegations within the citation are

6    accurate. ECF No. 9 ¶¶ 57, 58. In fact, Plaintiff pled that he refuted these citations and that the

7    citations were dismissed. ECF No. 9 ¶¶ 63, 64. If anything, the dismissed citation supports a claim

8    that the officers who stopped, seized, and used force upon Plaintiff did not have probable cause to

9    do so. *See e.g. Thompson v. Clark*, 596 U.S. 36, 37, 142 S. Ct. 1332, 1334 (2022) (holding that

10   dismissal of a citation supports a wrongful prosecution claim). Therefore, this Court should not

11   consider any of Defendants' assertions which rely on allegations of Plaintiff admitting to running

12   a stop sign, failing to stop for emergency lights, resisting arrest, or obstructing an arrest because

13   Plaintiff never admitted to doing these acts.

14   **B. The Las Vegas City Marshals lack jurisdiction over general traffic stops and their
15      jurisdiction must be limited to only the real property owned, leased or managed by
        the City of Las Vegas.**

16   The Las Vegas City Marshal's are "[p]eace officer[s] with limited jurisdiction." NRS

17   171.122. Defendants acknowledge this limited jurisdiction and cite a statute which limits the

18   Marshals jurisdiction, NRS 280.125, and a municipal code limiting the Marshals jurisdiction,

19   LVMC § 11.04.040.

20   LVMC § 11.04.040 states that:
     "It is the duty of the officers of the Las Vegas Metropolitan Police
21   Department and such other officers as are assigned by the Sheriff to enforce,
     and, to the extent consistent with State law, officers of the City's Deputy
22   Marshal Unit are authorized to enforce, all street traffic laws of the City and
     all of the State vehicle laws applicable to street traffic in the City."
23

24

1   This municipal code acknowledges a clear distinction between the jurisdiction of the Las Vegas

2   Metropolitan Police Department and the Las Vegas City Marshals. The Marshals only have

3   jurisdiction to enforce laws within Las Vegas "to the extent consistent with State law." LVMC §

4   11.04.040. This caveat to the Marshals' jurisdiction highlights that the Marshals authority to

5   conduct traffic stops must be limited in some way when compared to the authority of the Las Vegas

6   Metropolitan Police Department.

7       NRS 280.125 allows a political subdivision of the state of Nevada that has created a

8   metropolitan police department to also establish certain units of specialized law enforcement. NRS

9   280.125 lists these units of specialized law enforcement and describes the limited authority and

10  jurisdiction these units have. Listed amongst these units of specialized law enforcement are the

11  City of Las Vegas Marshals. NRS 280.125(1)(b). The authority and jurisdiction of the Marshals is

12  explicitly limited to:

13          (a) The issuance of citations in accordance with the provisions of NRS
            171.17751;
14          (b) The enforcement of state laws and city and county ordinances on real
            property owned, leased or otherwise under the control of the participating
            political subdivision;
15          (c) The service of warrants of arrest issued pursuant to NRS 5.060;
            (d) The removal of abandoned vehicles as authorized by NRS 487.230; and
16          (e) The duties set forth in NRS 171.1223.

17  NRS 280.125(3). Of these, Defendants claim that NRS 280.125(3)(b) provide the Marshals with

18  unlimited jurisdiction and the authority to conduct traffic stops on any public street within the

19  boundaries of the City of Las Vegas.

20      The "cardinal principle of statutory construction that a statute ought, upon the whole, to be

21  so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void,

22  or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)

23  (citation and quotes omitted); *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct.

24  1723, 1730, 179 L. Ed. 2d 723 (2011) ("Courts should not render statutes nugatory through

1    construction.") Allowing the City of Las Vegas Marshals to operate with equal and concurrent to

2    the Las Vegas Metropolitan Police Department would render the text of NRS 280.125 nugatory.

3         Defendants argue that the description of real property within NRS 280.125(3) includes any

4    property within the boundaries of the city of Las Vegas. This reading again violates the concept

5    that a term should not be rendered nugatory in the interpretation of a statute as the Legislature used

6    particular language when drafting NRS 280.125(3). The Legislature intentionally found that the

7    Marshals jurisdiction is limited to "real property owned, leased or otherwise under the control of

8    the participating political subdivision." The Legislature did not state that the Marshals jurisdiction

9    is limited to the boundaries of the City of Las Vegas. Also, despite Defendants assertions

10   otherwise, streets are not real property owned, leased, or otherwise under the control of the City

11   of Las Vegas. First, public streets are not included in the definition of real property that Defendants

12   use in their Motion to Dismiss, and the term streets is defined separately. Compare NRS 268.708

13   with NRS 268.720. This distinction is necessary as municipalities have the full bundle of rights to

14   real property, that is the power to acquire, control, improve, and dispose of real property after

15   appraisal and due public process. NRS 268.048; NRS 268.050; NRS 268.053. Streets, however,

16   are typically held as public easements or rights-of-way and municipalities do not have the same

17   rights to streets as they do other properties. *See* NRS 278.480 (requiring abandoned streets to be

18   reverted back to abutting property owners once public easement is vacated).

19        The Nevada Supreme Court recognized this distinction when it found that the people of the

20   state, through the Legislature, own the streets. *State ex rel. Reno v. Reno Traction Co.*, 41 Nev.

21   405, 416, 171 P. 375, 378 (1918) (recognizing the "sovereignty of the state over the streets and

22   avenues of a municipal corporation within its borders," and finding that granting powers and

23   responsibilities to a municipality over the streets does not "constitute a relinquishment of the

24   sovereignty held by the state over those streets and avenues"). This sovereign authority of the state

1    is limited as well since streets are still not owned by the State but are instead held "in trust for the

2    public." *Teacher Bldg. Co. v. Las Vegas*, 68 Nev. 307, 319, 232 P.2d 119, 124 (1951) (recognizing

3    the need for judicial review regarding a challenged legislative decision to close a street.)

4         Additionally, it is a disputed question of fact whether the traffic stop even occurred on

5    property within the boundaries of the city of Las Vegas and it is certainly a disputed question of

6    fact whether the traffic stop occurred on real property owned, managed, or leased by the City of

7    Las Vegas. For these reasons alone, Defendants' Motion to Dismiss should be denied.

8         Defendants' argument that because the Marshals are required to be trained as Category I

9    peace officers the Marshals' jurisdiction and authority extends throughout all of Nevada also fails.

10   The plain language of NRS 289.460 defines the term Category I peace officer and then within the

11   rest of NRS 289 the term Category I peace officer is used to determine the level of training an

12   officer is required to have before receiving any policing authority and jurisdiction. To read this

13   definition as instead eliminating any other statutory limitations on the Marshals' authority and

14   jurisdiction is absurd. Category I peace officers may be peace officers who have unrestricted

15   duties, but unrestricted duties do not equate to unrestricted authority and jurisdiction. Instead, the

16   jurisdiction and authority of these Category I peace officers is limited by other statutes, just like

17   how the Marshals' jurisdiction and authority is limited by NRS 280.125.

18        Defendants also claim that NRS 171.124(1)(a) justifies the arrest and seizure of Plaintiff.

19   NRS 171.124(1)(a) allows a peace officer to make an arrest for a public offense committed in the

20   peace officer's presence. The term "public offense" or sometimes just offense is used throughout

21   NRS 171 to refer to misdemeanors, gross misdemeanors, and felonies, not civil infractions like

22   most simple traffic citations. *See* NRS 171.136 (outlining that offenses can be either felonies or

23   misdemeanors). Under NRS 484A.7033 peace officers, unless otherwise prohibited by law, may

24   detain a person they believe has violated a "civil infraction." The statutes governing these traffic

1  violations clearly use the term "civil infraction" to describe minor traffic violations, not the term

2  "offense" or "public offense" used within NRS 171.124(1)(a). In fact, NRS 484A.7035 clearly

3  states that "a civil infraction is not a criminal offense."

4        This distinction between a civil infraction and a public offense is necessary. Private persons

5  can make arrests for "public offenses" committed in their presence just like the Marshals. *See e.g.*

6  NRS 171.126 (a private person can make an arrest for a "public offense committed of attempted

7  in the person's presence"). If the law allowed any private person to make an arrest, under NRS

8  171.126, for any civil infraction, such as NRS 484B.165 which generally makes using a cell phone

9  while driving a civil infraction, Nevada would be replete with vigilante traffic enforcers. This does

10 not mean that the Marshals have no authority to make any stops or arrests, however. There are

11 explicit exceptions to this distinction such as the one outlined in the case cited by Defendants

12 which involved a drunk driving incident. *Nevada v. Eighth Judicial Dist. Court of State*, 116 Nev.

13 127, 138, 994 P.2d 692, 699 (2000). Actions like drunk driving and reckless driving are not mere

14 civil infractions, instead they are misdemeanors, and therefore the Marshals may be able to make

15 stops when they observe these actions. *See* NRS 484C.400(1)(a).

16        Finally, as outlined in Plaintiff's complaint, the Legislature, a former Clark County District

17 Attorney, and even the City of Las Vegas itself have acknowledged the limited jurisdiction of the

18 City of Las Vegas Marshals. ECF No. 9 ¶¶ 102, 106, 107, and 108.

19

20      **C.  Whether the seizure, search, prolonged detention, and the use of force used on
        Plaintiff were all reasonable under the Fourth Amendment are disputed facts.**

21      The Fourth Amendment prohibits unreasonable searches and seizures, prolonged detention

22 without reasonable suspicion of a crime justifying prolonged detention, and the use of excessive

23 force. U.S. Const. amend. IV. Following a traffic stop where an officer unconstitutionally initiated

24 the stop, unconstitutionally prolonged the stop, and used an unconstitutional amount of force a

1    Plaintiff may recover for the initial stop, the prolonged detention, and the excessive use of force.

2    *See Rodriguez v. United States*, 575 U.S. 348, 354-55, 357-58, 135 S. Ct. 1609, 191 L. Ed. 2d 492

3    (2015). The Nevada Constitution contains provisions which not only offer similar protections to

4    those contained within the Fourth Amendment but can also provide greater protections. *State v.*

5    *Bayard*, 119 Nev. 241, 246, 71 P.3d 498, 502 (2003).

6          Whether officers' actions were reasonable under the Fourth Amendment is generally a question

7    of fact, and the determination of reasonableness "should only be taken from the jury in rare cases."

8    *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1205-06 (9th Cir. 2000);

9    *Thompson v. Souza*, 111 F.3d 694, (9th Cir. 1997) ("the reasonableness of a search or seizure is a

10   fact-intensive inquiry that cannot be determined at this [12b6] stage.") Defendants argue that the

11   officers' actions were reasonable under the Fourth Amendment and therefore Plaintiff's complaint

12   should be dismissed. Not only is Defendants' claim premature at this stage of litigation, as it relies

13   on questions of fact, but it is also inaccurate. These inaccuracies are addressed below.

14

15          **1.   Whether Guzman had factual basis to conduct a traffic offense is in dispute.**

16          Defendants acknowledge that the Fourth Amendment, and Article 1, Section 18 of the Nevada

17   Constitution, bar unreasonable searches and seizures and that a traffic stop is a seizure under the

18   Fourth Amendment. ECF No 10 at 7:16-21; *Maryland v. Buie*, 494 U.S. 325, 331 (1990); *United*

19   *States v. Garcia*, 205 F.3d 1182, 1186 (9th Cir. 2000). A stop may be reasonable when there is

20   probable cause to believe that a traffic violation has occurred. *Wren v. United States*, 517 U.S.

21   806, 810 (1996). However, Defendants have not shown in their Motion to Dismiss that there was

22   probable cause that Plaintiff had committed a traffic violation.

23

24

1    Defendants primarily rely on the dismissed citation Plaintiff received to support their theory

2    that there was probable cause to stop Plaintiff. As discussed above, the allegations contained within

3    this ticket cannot be relied upon as an admission from Plaintiff.

4    Defendants next rely on allegations they claim shows that Plaintiff "repeatedly failed to follow

5    Officer Guzman's instructions." ECF No. 8 at 8:16-21. However, all but one of these instructions

6    are alleged to have occurred after the stop and therefore cannot serve as proof that the stop itself

7    was reasonable. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1128 (9th Cir. 2000)

8    (considering only the factors officers had available to them at the time of a stop in a constitutional

9    challenge to a stop).

10    The only claim which is alleged to have occurred before Plaintiff pulled over was that "Plaintiff

11    did not immediately pull over when Guzman activated his lights." ECF No. 8 at 8:16-21. This

12    claim is based upon a dismissed citation and Plaintiff's pleading which states that Plaintiff saw the

13    lights of Guzman's squad car and "Plaintiff then pulled over to a safe location within his

14    community". ECF No 9 ¶ 17. It is a clear question of fact whether Plaintiff pulling over once he

15    saw Guzman's lights justifies Guzman's decision to initiate a stop and Defendants cannot interpret

16    the facts in a light most favorable to them in a motion to dismiss. Therefore, Defendants' Motion

17    to Dismiss should be denied.

18    However, it is also a question of fact whether Plaintiff even needed to pull over. It is in dispute

19    when or even if Guzman ever activated his siren in addition to deploying his lights, which he is

20    required to do under NRS 484B.550(2) in order to instigate a legal stop.

21

22    **2.  Whether the Defendants had a valid basis to handcuff and restrain Plaintiff for an alleged routine traffic violation is in dispute.**

23    Under ordinary circumstances, when the police have only reasonable suspicion to make an

24    investigatory stop, drawing weapons and using handcuffs and other restraints will violate the

Fourth Amendment. *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996). Similarly, it is a violation of Article 1, Section 18 of the Nevada Constitution for an officer to unreasonably exercise their discretion to arrest an individual instead of issuing a traffic citation when the alleged offense is a minor traffic violation. *State v. Bayard*, 119 Nev. at 247, 71 P.3d at 502.

Officers may handcuff an individual during an investigatory stop only when "it is a reasonable response to legitimate safety concerns on the part of the investigating officers," or the officer establishes probable cause of a separate crime. *Washington v. Lambert*, 98 F.3d at 1186. This includes situations "where the suspect is uncooperative or takes action at the scene that raises a *reasonable* possibility of danger or flight." *Hartrim v. Las Vegas Metro. Police Dep't*, 603 F. App'x 588, 588 (9th Cir. 2015) (emphasis added). However, this intrusive and aggressive police conduct must be a reasonable response to legitimate safety concerns. *Washington v. Lambert*, 98 F.3d at 1187.

Defendants criticize Plaintiff for not rolling all of his windows down, not asking and receiving permission to roll up his driver's window as he exited the vehicle, and questioning where Guzman wanted him to go and where Guzman wanted him to look.

As alleged in the complaint, Plaintiff was stopped after being pulled over by Guzman. ECF No. 9 ¶¶ 15-18. Guzman approached the Plaintiff's vehicle and ordered Plaintiff to place his hand outside the vehicle. *Id*. ¶ 21. Plaintiff did so. *Id*. ¶ 22. Then Guzman told Plaintiff to roll down all of his windows. *Id*. ¶ 23. Plaintiff asked why he needed to do so. *Id*. ¶ 23. Guzman responded by threatening to pull Plaintiff out of the vehicle. *Id*. ¶ 24. Plaintiff let Guzman know that he was willing to step out of the vehicle. *Id*. ¶ 25. Guzman ordered Plaintiff to do so and Plaintiff stepped out of the vehicle and as he got out of his vehicle Plaintiff rolled his window up. *Id*. ¶ 25-26. Plaintiff then walked to the front of Guzman's car with his hands in the air. *Id*. ¶ 27-28. From the front of Guzman's car Plaintiff looked at Guzman. *Id*. ¶ 30-31. Guzman told Plaintiff to look

1  forward and Plaintiff began to explain that he needed to be able to see Guzman in order to stay

2  safe. *Id.*

3      These facts do not support the assertion by Defendants that Plaintiff was handcuffed and

4  physically restrained because Plaintiff raised a legitimate safety risk. Clearly it is a question of fact

5  whether the Marshal Defendants had a valid basis to handcuff and restrain Plaintiff.  Therefore,

6  Defendants' Motion to Dismiss should be denied.

7          **3.  Whether Defendants had probable cause to arrest Plaintiff is in dispute.**

8      "Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v.*

9  *Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause for a warrantless arrest arises when

10 the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent

11 person to believe that the suspect has committed . . . . an offense." *Crowe v. Cnty. of San Diego*,

12 608 F.3d 406, 432 (9th Cir. 2010) (internal quotation and citation omitted).

13     Defendants acknowledge that Plaintiff was arrested "[a]fter Guzman pulled Plaintiff over for

14 a traffic violation, and after Plaintiff failed to follow Guzman's directions." ECF No 10 at 9:14-

15 15. Defendants claim that Plaintiff's alleged traffic offenses, Plaintiff's "defiance", and the

16 allegation that Plaintiff obstructed/resisted arrest prove that there was probable cause for this

17 arrest.

18     Plaintiff's alleged traffic offense does not establish probable cause for an arrest, as there was

19 not even a reasonable suspicion that Plaintiff had committed any traffic offenses. And under

20 Nevada law an officer cannot make an arrest for a minor traffic violation alone. NRS 484A.7033

21 (arrests following traffic stops are only legal if there is probable cause of a separate arrestable

22 offense); *State v. Bayard*, 119 Nev. at 247, 71 P.3d at 502.

23     Questioning an officer is not a crime; in fact, it is protected First Amendment activity. "The

24 freedom of individuals verbally to oppose or challenge police action without thereby risking arrest

is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (alteration in original). Additionally, temporary refusal to comply with an officer's command is not in itself a valid basis for arrest. *Mackinney v. Nielsen*, 69 F.3d 1002, 1005-06 (9th Cir. 1995).

This leaves only Defendants' claim that Plaintiff resisted arrest and this resistance justified the arrest. But Plaintiff's resisting/obstructing arrest claim was dismissed and Plaintiff refutes any claims that he was resisting/obstructing arrest. However, even if Plaintiff had resisted arrest, Guzman's initial justification for the arrest was unlawful as Plaintiff is not alleged to have committed any other crimes. Resisting an unlawful arrest cannot be the sole basis to establish probable cause for that arrest. *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007).

Since it is clearly a disputed issue of fact whether the Marshal Defendants' had probable cause to arrest Plaintiff, Defendants' Motion to Dismiss should be denied.

### 4. Whether the Defendants' prolonged detention of Plaintiff was reasonable is in dispute.

The duration of a stop alone may render it violative of the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). Traffic stops should be "relatively brief encounter[s]" limited to addressing the traffic violations, making ordinary inquiries incident to the traffic stop, and attending to related safety concerns. *Rodriguez*, 575 U.S. at 354-55, 357-58. Traffic stops may be extended if the officer has "reasonable suspicion of an independent offense" which warrants conducting "an investigation into matters other than the original traffic violation." *United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019).

Defendants' sole justification for prolonging what could have been a brief encounter to over four hours is that "Plaintiff's series of defiant conduct upon being stopped led to a legal basis for arrest: resisting and obstructing." ECF No. 10 at 10:14-18. Notably, Defendants do not argue that

1  the initial stop justified the four-hour stop, only that Plaintiff's alleged resisting/obstructing did.

2  As detailed above, there was no probable cause to arrest Plaintiff. Because the arrest was

3  unconstitutional, the prolonged detention is also unconstitutional. This is true even if Defendants

4  had a reasonable suspicion to believe that Defendant had committed a traffic violation since a four-

5  hour traffic stop is unreasonable when the alleged offense is a minor traffic violation. *See United*

6  *States v. Gorman*, Nos. 15-16600, 15-17103, 15-16694, 2017 U.S. App. LEXIS 18610, at *17 (9th

7  Cir. Sep. 14, 2017) (finding that a 30 minute traffic stop violated the Fourth Amendment). Since

8  the reasonableness of the stop is a question of fact in dispute, Defendants' Motion to Dismiss

9  should be denied.

10           **5.  Whether Defendants' use of force was excessive is in dispute.**

11      In addition to an officer actually applying force to a person, "the use of handcuffs is the use of

12  force, and such force must be objectively reasonable under the circumstances." *Muehler v. Mena*,

13  544 U.S. 93, 103, 125 S. Ct. 1465, 1472 (2005). As is pointing a gun at someone, even when there

14  is no physical injury. *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007).

15      When analyzing use of force claims Courts consider "whether the officers' actions are

16  'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v.*

17  *Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). When determining if an

18  officer's use of force was reasonable, courts consider "the severity of the crime at issue, whether

19  the suspect poses an immediate threat to the safety of the officers or others, and whether he is

20  actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.

21  Ct. 1865.

22      Defendants' argument to justify the force Defendants used upon Plaintiff is a claim that

23  Plaintiff "failed to comply and resisted." ECF No. 10 at 11:4-10. As discussed above, Plaintiff did

24

1  not fail to comply or resist and Defendants only rely upon a dismissed citation and

2  misrepresentations of Plaintiff's First Amended Complaint to indicate that Plaintiff did resist.

3      Defendants also argue that Hartz, Jopalian, and Mazza cannot be liable for the excessive force

4  as they were not integral participants. Officers can be held liable for the excessive force of other

5  officers if they "had an opportunity to intercede" but failed to do so. *Hughes v. Rodriguez*, 31 F.4th

6  1211, 1223 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir.

7  2000)). Officers may also be held liable if they participate in the excessive force in some

8  meaningful way. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).

9      Here, Mazza directly assisted in the excessive force when she aggressively, suddenly, and

10  without reason yanked Plaintiff's arms when he was handcuffed. Mazza, as the first to arrive on

11  the scene, as well as Jopalian and Hartz as the supervisors who arrived on the scene, are liable as

12  integral participants for failing to intervene in the excessive force applied to Plaintiff. Additionally,

13  all of these officers left Plaintiff tightly handcuffed despite there being no probable cause to arrest

14  Plaintiff and no reasonable suspicion to stop Plaintiff.

15      Again, since it is a disputed question of fact whether the force used upon Plaintiff was

16  reasonable and whether Hartz, Jopalian, and Mazza were integral participants to the use of force

17  Defendants' Motion to Dismiss is improper at this stage and should be denied.

18

19  **D.  Qualified immunity does not apply to Plaintiff's Federal claims as each of the Marshals' unconstitutional actions is clearly established as unconstitutional.**

20      To defeat a government official's assertion of qualified immunity, a plaintiff must show that:

21  (1) the official's conduct violated a constitutional right; and (2) the right was "clearly established"

22  at the time of the official's conduct. *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012).

23      Each of Plaintiff's claims identifies the violation of Plaintiff's clearly established rights and

24  is addressed above. Therefore, the remaining requirement is to show that the right was "clearly

established" at the time of the Defendants conduct. For the right to be "clearly established" courts

often look to existing caselaw.

- It is clearly established that a stop without any probable cause is unreasonable. *Delaware v. Prouse*, 440 U.S. 648, 651, 99 S. Ct. 1391, 1394 (1979). Here Guzman did not have probable cause to believe that Plaintiff had violated any traffic laws.

- It is clearly established that someone cannot be arrested simply for questioning an officer. *Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022). Here Plaintiff was arrested for questioning officer Guzman.

- It is clearly established that a traffic stop extended without a valid investigatory purpose is unreasonable. *Liberal v. Estrada*, 632 F.3d 1064, 1079-82 (9th Cir. 2011) (holding that a forty-minute stop was unreasonable). Here the stop was for four hours and had no valid investigatory purpose.

- It is clearly established that an officer "may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1378 (9th Cir. 1990). Here Guzman violated Plaintiff's rights because Plaintiff was questioning Guzman.

- It is clearly established that "pointing guns at persons who are compliant and present no danger is a constitutional violation." *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (*quoting Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009)); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 776 (9th Cir. 2009) (it is unconstitutional to point a gun at an individual where "[t]he crime under investigation was at most a misdemeanor[,] the suspect was apparently unarmed and approaching the officers in a peaceful way[,] [t]here were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the plaintiff" (alterations in original) (*quoting Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002) (en banc))).

- It is clearly established that utilizing a taser on a non-violent individual who is suspected of a minor offense is an excessive use of force. *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc). Here, Guzman drew his taser despite Plaintiff complying with Guzman's orders.

- It is clearly established that hitting a compliant individual with a weapon is an excessive use of force. *Simon v. City of Phx.*, 436 F. App'x 756, 757 (9th Cir. 2011). Here, Guzman shoved a taser into Plaintiff's ribs despite Plaintiff complying with Guzman's orders.

Since each of Plaintiff's claims are related to clearly established rights which were violated,

Defendants' Motion to Dismiss should be denied.

**E. Discretionary immunity does not apply to Plaintiff's State claims as the officers acted in bad faith and Plaintiff's claims are based upon constitutional violations.**

Defendants' baldly claim that "[a]n officer's decision to stop, detain, search and arrest are a discretionary function under Nevada law." ECF No. 10 at 16:16-17. However discretionary immunity is limited in two important ways: (1) it does not apply for actions taken in bad faith, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007); and (2) acts that violate the Constitution or legal mandates are not discretionary. *See Sommer v. Las Vegas Metro. Police Dep't*, No. 2:23-cv-01682-GMN-NJK, 2025 U.S. Dist. LEXIS 77129, at *42 (D. Nev. Apr. 22, 2025) (citing Mirmehdi v. United States, 689 F.3d 975, 984 (9th Cir. 2011); Nurse v. United States, 226 F.3d 996, 1002 (9th Cir. 2000)).

As outlined above, the Marshals violated Plaintiff's constitutional rights which means discretionary immunity does not apply. Additionally, it is a disputed issue of fact whether Defendants acted in bad faith which also means that discretionary immunity does not apply.

**F. Defendants are actively and openly exceeding their constitutional authority which constitutes a Monell violation.**

To survive a motion to dismiss under a theory of Monell liability, a plaintiff must allege that "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Defendants claim that Plaintiff has not identified a policy, Plaintiff did not show that the City ratified the Marshals actions, and that Plaintiff did not link the policy/ratification to the constitutional violation.

**1. The City has policies and procedures authorizing the Marshals to conduct policing beyond the scope of their authority.**

In his First Amended Complaint Plaintiff clearly states that the City has a policy or custom which instructs the Las Vegas City Marshals to exceed the scope of their authority and conduct general traffic stops. ECF No. 9 ¶ 95-112. Defendants do not dispute that the Las Vegas City Marshals are conducting traffic stops in their Motion to Dismiss, instead arguing that they are permitted to conduct traffic stops. ECF No. 10 at 5:16-7:8. As discussed above, the Marshals are acting outside of their jurisdiction and in excess of their authority and Plaintiff has sufficiently plead Monell liability in regard to the City's unconstitutional practice and policy of instructing the Marshals to conduct policing activities outside of the scope of their authority. Additionally, Plaintiff identifies other instances of traffic stops conducted by the Marshals in his First Amended Complaint and points out that the Marshal's website states claims that the Marshals have the authority to conduct general traffic stops. *See* ECF No. 9 para 103-4.

These clear and undisputed policies and procedures support a Monell violation on behalf of the City of Las Vegas and any of Defendants' arguments related to this violation consist of factual disputes which are appropriate for consideration at this stage.

**2. Alternatively, the City is deliberately indifferent to the obvious scope of the Marshals' authority and the inadequate training of Marshals and therefore is liable under Monell.**

When a government agency's inadequacy is so likely to result in a constitutional violation that the need to take action is obvious, a government agency can be held liable under Monell. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 418, 117 S. Ct. 1382, 1395 (1997).

1. The City has been informed on multiple occasions and by multiple parties that the Marshals are operating outside of their jurisdiction and beyond the scope of their authority. A letter drafted by a former Clark County District Attorney details to the City outlines the scope of their authority and how the Marshals are policing outside their jurisdiction. ECF No. 9 ¶ 106. Despite

1    this clear and public communication, the City has not reduced the enforcement of the Marshals.

2    There has been an obvious need to address this overreach and the City has instead double-downed

3    and stated on their website that the Marshals are "authorized to enforce all municipal street and

4    traffic laws as well as state vehicle laws applicable to city roadways." ECF No. 9 ¶ 104.

5                    **3.   The Marshals unconstitutional policing was ratified by the City.**

6         As indicated in the First Amended Complaint, the City ratified the actions of the Marshals by

7    changing the City website to more boldly adopt the idea that the Marshals are not limited to real

8    property owned, managed, or leased by the City. ECF No. 9 ¶ 104. Additionally, the Marshals

9    violation of Plaintiff's rights were ratified by the supervisors who arrived on the scene well before

10   the four-hour arrest had ended. ECF No. 9 ¶¶ 146-150. This clear ratification satisfies Monell.

11

12   **G.  Plaintiff has adequately plead a claim for the intentional torts of false arrest and imprisonment, battery and assault, and intentional infliction of emotional distress.**

13        A Plaintiff is entitled to all reasonable inferences from the fact alleged in the complaint when

14   defending against a motion to dismiss. *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

15   "[L]iability attaches for concert of action if two persons commit a tort while acting in concert with

16   one another or pursuant to a common design." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 970

17   P.2d 98, 111 (Nev. 1998) (citation omitted), overruled in part on other grounds by *GES, Inc. v.*

18   *Corbitt*, 117 Nev. 265, 21 P.3d 11 (Nev. 2001).

19        Plaintiff, in his First Amended Complaint, alleges that Defendant Guzman falsely arrested,

20   assaulted, and intentionally inflicted emotional distress upon Plaintiff. ECF No. 9 ¶¶ 247 – 287.

21   Because Mazza, Jopalian, and Hartz assisted Guzman in committing these torts, they are liable

22   under the theory of concert of action. Additionally, Mazza actively assisted Guzman with these

23   torts.

24

1    Defendants ask this Court to dismiss Plaintiff's false arrest and imprisonment, assault, and

2    battery claims because Defendants claim that their actions were reasonable and there was probable

3    cause for the arrest. Whether or not there was probable cause to effectuate an arrest is a question

4    of fact which generally cannot be determined at the motion to dismiss stage. *Knox v. Sw. Airlines*,

5    124 F.3d 1103, 1108 (9th Cir. 1997). Since probable cause for the arrest is in dispute, Plaintiff's

6    false arrest and imprisonment claim must survive. Similarly, whether force used was "reasonably

7    necessary" is a factual question inappropriate for resolution at the pleading stage. Also, Defendants

8    once again rely on the contents of the citation to support their claim of reasonableness which they

9    cannot do. ECF No. 10 at 19:7-13.

10    Defendants also claim that Plaintiff's assault claim must be dismissed because Plaintiff did not

11    affirmatively plead that Guzman intended to cause Plaintiff harm and that Plaintiff did not plead

12    that he was "put in apprehension" of any harmful contact. The tort assault requires a Plaintiff to

13    plead that the actor intended to cause the harmful contact not that the actor had the specific intent

14    to cause harm itself. *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001). Plaintiff's First

15    Amended Complaint alleges that Defendant Guzman approached Plaintiff in a threatening manner,

16    raised his voice, and made sudden, aggressive movements toward Plaintiff while reaching for his

17    service weapon. ECF No. 9 ¶¶ 19, 24, 27, 30-33.  These actions, viewed in the light most favorable

18    to Plaintiff, are sufficient to allege that Guzman intended to cause apprehension of harmful or

19    offensive contact, and that Plaintiff was, in fact, placed in such apprehension.  Whether or not that

20    led to apprehension is a disputed issue of fact not ripe for dismissal at this stage.

21    Defendants ask this Court to dismiss Plaintiff's battery claim because "Plaintiff does not assert

22    Guzman's conduct was intentional, nor a lack of consent." Plaintiff's First Amended Complaint

23    alleges that Guzman grabbed Plaintiff's arm, restrained him, shoved a taser into Plaintiff's ribs,

24    threw Plaintiff to the ground, and at no point does Plaintiff claim that he consented to these actions.

1  ECF No. 9 ¶¶ 32-47. Defendants' argument that the First Amended Complaint fails to allege intent

2  or lack of consent is contradicted by these specific factual allegations and highlights that this is a

3  factual dispute which cannot be dismissed at this stage.

4      Defendants challenge Plaintiff's IIED claim on the basis that Defendants actions do not

5  constitute extreme and outrageous conduct. This is, once again, a question of fact which cannot be

6  determined at the motion to dismiss stage. *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir. 1985).

7      **H. The City is liable for the torts of its employees here.**

8      Under Nevada law, a municipal employer such as the City may be held vicariously liable for

9  the intentional torts of its employees when those acts are committed within the course and scope

10  of employment. *Ma v. Bank of Am., N.A.*, No. 24-3567, 2025 U.S. App. LEXIS 19336, at *3 (9th

11  Cir. Aug. 1, 2025). "Whether an employee is acting within the scope of his or her employment is

12  a question for the trier of fact." *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1225, 925

13  P.2d 1175, 1180 (1996). Similarly, the foreseeability of act of the employee is also generally a

14  question of fact. *Anderson v. Mandalay Corp.*, 131 Nev. 825, 832, 358 P.3d 242, 247 (2015)

15  Despite this, Defendants ask this Court to simply assume that the Marshal's actions were not

16  foreseeable. ECF No 10. at 21:17-22:5. Because this is a factual dispute Defendants' Motion to

17  Dismiss should be denied.

18      **I. The City was negligent in the training and supervision of the Marshals.**

19      Defendant argues that decisions regarding training, supervision, and retention of employees

20  are inherently discretionary because they require policy-based judgments about resource

21  allocation, priorities, and community needs. ECF No. 10 at 22:14-23:5. Although decisions related

22  to hiring, training, and supervision which are based on policy considerations fall within the scope

23  of discretionary-function immunity, those which are not based on policy considerations are not

24  subject to discretionary immunity at the motion to dismiss stage. *Clark Cty. Sch. Dist. v. Payo*, 133

1  Nev. 626, 634, 403 P.3d 1270, 1276 (2017). And as previously stated, discretionary-function

2  immunity does not apply to bad faith and unconstitutional actions. *Scafidi v. Las Vegas Metro.*

3  *Police Dep't*, 966 F.3d 960, 965 (9th Cir. 2020). It is a clear dispute of fact whether the Marshal

4  Defendants were improperly trained, supervised, hired, and maintained in bad faith and in violation

5  of the Nevada Constitution.

6

7  **J.   Plaintiff can recover punitive damages against the City for his state constitutional claims.**

8  Plaintiff concedes that he cannot recover punitive damages under his Monell theory.

9  However, there is no bar restricting Plaintiff's ability to recover punitive damages under the

10  Nevada Constitution. The case cited by Defendants does not address punitive damages under the

11  Nevada Constitution, *Eggleston v. Stuart*, 137 Nev. 506, 514, 495 P.3d 482, 491 (2021), and the

12  statute cited by Defendants which limits awards for tort damages does not inherently apply to

13  constitutional damages. NRS 41.035 (only addressing damages in "an action sounding in tort");

14  *Mack v. Williams*, 522 P.3d 434, 449 (Nev. 2022).

15

16  **K.   Plaintiff plead attorney fees as special damages in order to satisfy the requirement that special damages must be plead and proven by evidence at trial.**

17  Special damages pursuant to Sandy Valley must be plead and proven by evidence at trial.

18  *Pardee Homes v. Wolfram*, 135 Nev. 173, 177, 444 P.3d 423, 426 (2019). In an effort to ensure

19  that special damages under *Sandy Valley* were properly and distinctly plead, Plaintiff listed

20  attorney fees as a separate cause of action. Should this Court find that improper, Plaintiff asks that

21  the Court dismiss the cause of action but allow the claim for attorney fees as special damages to

22  survive as a basis for recovery of fees and expenses in this case.

23

24

In addition to distinctly pleading special damages, Plaintiff satisfies the *Sandy Valley* pleading requirements by asserting bad faith, ECF No. 10 ¶ 299, and requesting injunctive and declaratory relief. Id. ¶ 300.

**L. Leave to amend**

Courts generally "freely give" leave to amend when there is no evidence of "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Here, there is no undue delay or bad faith precluding amendment. Additionally, amendment would not be futile. Should this Court find any deficiencies within Plaintiff's First Amended Compliant, Plaintiff can add additional information regarding:

- Mayor Shelley Berkley's ratification of the Marshal's activity in a news interview where she called the lawsuit frivolous and claimed that the Marshal's had the authority to conduct general traffic stops;
- Additional cases involving Guzman including a use of force case and a traffic stop case that also alleges that the Marshal's have limited jurisdiction;
- Responses to a public records request addressed to the City of Las Vegas for any and all procedures, policies, and trainings involving use of force, traffic stops, and jurisdiction.

[intentionally blank]

**III.    Conclusion**

Plaintiff requests that Defendants' Motion to Dismiss be denied in full, or in the alternative, Plaintiff be permitted to file a second amended complaint in order to remedy any deficiencies.

Dated August 20, 2025.

**AMERICAN CIVIL LIBERTIES UNION OF NEVADA**

Jacob T. S. Valentine (NV Bar No. 16324)
Christopher M. Peterson (NV Bar No. 13932)
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Email: jvalentine@aclunv.org
          peterson@aclunv.org
*Attorneys for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

2    I hereby certify that on August 20, 2025, I electronically filed a true and correct copy of

3   the foregoing Opposition to Defendants' Motion to Dismiss. I further certify that all participants

4   in the case are registered CM/ECF users and that service will be accomplished on all participants

5   by:

6

7   ☒    CM/ECF

8   ☐    Electronic mail; or

9   ☐    US Mail or Carrier Service

10

11                                                    */s/Suzanne Lara*
                                                     An employee of the ACLU of Nevada

12

13

14

15

16

17

18

19

20

21

22

23

24